# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PABLO S. GONZALES,

      Plaintiff,

vs.                                                                      No. 00cv0082 BB/JHG

JOANNE B. BARNHART,[1]
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's (Gonzales') Motion to Reverse or Remand Administrative Decision, filed September 18, 2000. The Commissioner of Social Security issued a final decision denying Gonzales' application for disability insurance benefits. The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to remand is well taken and recommends that it be GRANTED.

Gonzales, now sixty years old, filed his application for disability insurance benefits on October 4, 1996, alleging disability since February 6, 1996, due to cold induced asthma, residuals of a right shoulder and left foot injury, musculoskeletal pain in various parts of his body, urination difficulties, psychological problems and depression. He has a high school education, three years of college and past relevant work as a security inspector and protection technology specialist.

---

[1] On November 9, 2001, JoAnne B. Barnhart was sworn in as Commissioner of the Social Security Administration. Thus, she is substituted as Defendant in this action.

The Commissioner denied Gonzales' application for disability insurance benefits both initially and on reconsideration. On September 22, 1998, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Gonzales had severe impairments consisting of cold induced asthma, residuals of a right shoulder and left foot injury, muculoskeletal pain in various parts of his body, and urination difficulties. Tr. 15. However, the ALJ found Gonzales did not have any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. Moreover, the ALJ found "no evidence in the record of a 'severe' mental or emotional impairment." *Id.* The ALJ further found Gonzales' subjective complaints were not supported by the medical evidence to the extent he alleged. Tr. 16. Finally, the ALJ found Gonzales retained the residual functional capacity (RFC) to perform a full range of medium-level work. Tr. 21. Gonzales filed a Request for Review of the decision by the Appeals Council. On November 23, 1999, the Appeals Council denied Gonzales' request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Gonzales seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a

claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse or remand, Gonzales makes the following arguments: (1) the ALJ's finding that his mental impairment is not severe is not supported by substantial evidence and is contrary to law; (2) the ALJ's RFC finding is not supported by substantial evidence and is contrary to law; (3) the ALJ's past relevant work analysis is not supported by substantial evidence and is contrary to law; and (4) the ALJ's findings regarding the impact of his nonexertional impairments usurps the role of a vocational expert and is therefore contrary to law.

Gonzales contends the ALJ's finding that his mental impairment is not severe is not

supported by substantial evidence and is contrary to law. While Gonzales bears the burden of proving his disability, at step two his burden is "de minimis." At step two, a claimant is required only to make a "de minimis showing" that his medically determinable impairments, in combination, are severe enough to significantly limit his ability to perform work-related activity. *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental abilities to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered. *See* SSR 85-28, 1985 WL 56856, at *3, *4 (1985).

Under 20 C.F.R. §§ 404.1523, when assessing the severity of whatever impairments an individual may have, the adjudicator must assess the impact of the combination of those impairments on the person's ability to function, rather than assess separately the contribution of each impairment to the restriction of his or her activity as if each impairment existed alone. A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental abilities to perform basic work activities. 20 C.F.R. § 404.1521. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process. 20 C.F.R. §§ 404.1523.

Additionally, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Although a not severe impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may be critical to the outcome of a claim when considered with limitations or restrictions due to other impairments. *Id.*

In some instances, limitations due to a "not severe" impairment in combination with limitations imposed by an individual's other impairments, may prevent a claimant from performing past relevant work or may narrow the range of other work that the individual may still be able to do. *Id.*

In this case, the ALJ found at step two of the sequential evaluation process that Gonzales "exhibited virtually no signs of a significant mental illness." Tr. 20. The ALJ further found Gonzales "was functioning well in terms of his daily activity level, his social interactions, his memory and concentration abilities, and his overall mental capacities" and exhibited "almost no functional limitations." *Id.* These findings are not supported by substantial evidence. Pursuant to 20 C.F.R. § 404.1520a, the ALJ also completed the Psychiatric Review Technique (PRT) form.

The ALJ relied on Dr. Hillman's consultative psychiatric examination to find Gonzales "exhibited virtually no signs of a significant mental illness." Tr. 20. However, Dr. Hillman's January 31, 1997 report indicates Gonzales appeared moderately to markedly anxious. Tr. 294. Additionally, although Dr. Hillman found Gonzales "fairly functional at home," he did not comment on how Gonzales would function in a work situation. Tr. 295. In fact, Dr. Hillman **strongly** recommended Gonzales see his counselor in Taos and opined that "with the addition of antianxiety medication his symptoms would come under better control." *Id.*

On January 7, 1997, Dr. Schreiber performed a consultative examination and found Gonzales suffered from "significant anxiety" which overrode all of Gonzales' other complaints. Tr. 290. Dr. Schreiber opined, "I think, in helping to determine this man's ability to function in a job market, a complete psychological evaluation would be mandatory." *Id.*

On January 12, 1996, Dr. Nagel, a psychiatrist, performed a fitness for duty evaluation

5

after Gonzales physically confronted his supervisor. Dr. Nagel reported Gonzales' mood was anxious and depressed and his affect was "intense and dramatic/frightened." Tr. 314A. Dr. Nagel also found Gonzales criticized and personalized with paranoid ideation and delusions and lacked insight and had questionable judgment. *Id.* Dr. Nagel diagnosed Gonzales with delusional disorder, adjustment disorder with anxiety and depression, and paranoid personality. Notably, Dr. Nagel found Gonzales was not fit for duty as a security guard due to his "paranoid delusions associated with fear and apprehension about the workplace." *Id.*

On January 17, 1996, Dr. Smith, the Deputy Group Leader for Los Alamos Environment, Safety, and Health Division, sent a memorandum to Gonzales' department head, recommending Gonzales "be permanently restricted from the duties of unarmed security officer, security police officers and security communications (CAS) personnel." Tr. 284. Dr. Smith's memorandum indicates the recommendation was based on Gonzales' medical records from his private medical doctor and a thorough evaluation by Frank Tikalsky, Ed.D. and Dr. Nagel. *Id.*

At the July 16, 1998 administrative hearing, Gonzales reported his main problem was nervousness. Tr. 53. Gonzales reported being so "nervous" and stated "I can't cope." Tr. 54. Gonzales reported having less nervousness around his wife but reported he got nervous when his children came to visit or when he was around other people. *Id.* Gonzales also reported his nervousness had become more severe in the past five years. *Id.* Based on the record as a whole, the Court finds that the ALJ's finding that Gonzales' mental impairment is not severe is not supported by substantial evidence and is contrary to law.

Gonzales also contends the ALJ's RFC finding and his past relevant work analysis is not supported by substantial evidence and is contrary to law. At step four, a claimant bears the

6

burden of proving that his medical impairments prevent him from performing work that he has performed in the past. *See Williams v. Bowen*, 844 F.2d at 751 & n.2. However, in order to make the ultimate finding that a claimant is not disabled at step four, the ALJ is required by the agency's rulings to make specific and detailed predicate findings concerning the claimant's residual functional capacity, the physical and mental demands of the claimant's past jobs, and how these demands mesh with the claimant's particular exertional and nonexertional limitations. See SSR 96-8p, SSR 82-62, 1982 WL 31386 at *4, see also *Winfrey v. Chater*, 92 F.3d 1017, 1023-25 (10th Cir.1996).

Moreover, in arriving at an RFC, agency rulings require that an ALJ must provide a "narrative discussion describing how the evidence supports" his or her conclusion. See SSR 96-8p, 1996 WL 374184, at *7. The ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* The ALJ must also explain how any material inconsistencies or ambiguities in the case record were considered and resolved." *Id*. "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id*. The RFC assessment "must not be expressed initially in terms of the exertional categories of "sedentary [or] light; "rather, a function-by-function evaluation is necessary in order to arrive at an accurate RFC. *Id*. at *3 ("[A] failure to first make a function-by-function assessment of the [claimant's] limitations of restrictions could result in the adjudicator overlooking some of [the claimant's] limitations or restrictions."). Here, the ALJ failed to make the detailed findings required by the

7

regulations and rulings at step four. On remand, the ALJ should reevaluate Gonzales' RFC pursuant to *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996) and SSR 96-8p.

Finally, resort to the medical-vocational guidelines (the grids) is inappropriate when evaluating nonexertional limitations. *Ragland v. Shalala*, 992 F.2d 1056, 1057 (10th Cir. 1993). In light of Gonzales nonexertional impairments, on remand, the ALJ should consult a vocational expert.

## RECOMMENDED DISPOSITION

The ALJ applied did not apply correct legal standards and his decision is not supported by substantial evidence. Gonzales' Motion to Reverse or Remand Administrative decision, filed September 18, 2000, should be granted to allow the ALJ to reevaluate Gonzales' mental impairment and reevaluate Gonzales' RFC pursuant to *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996) and SSR 96-8p.

 

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the

proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.